Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLOTTE TANNER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LIFE STORAGE, INC., MARK G. BARBERIO, JOSEPH V. SAFFIRE, DANA HAMILTON, SUSAN HARNETT, ARTHUR L. HAVENER, JR., EDWARD PETTINELLA, DAVID L. ROGERS, and STEPHEN R. RUSMISEL,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Charlotte Tanner ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Life Storage, Inc. ("Life Storage" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company and its affiliated entity Life Storage LP (the

"Partnership") with Extra Space Storage Inc. ("Parent") and Extra Space Storage LP ("Parent OP"), through merger vehicles Eros Merger Sub, LLC ("Extra Space Merger Sub", a wholly owned subsidiary of Parent) and Eros OP Merger Sub, LLC ("Extra Space OP Merger Sub", a wholly owned subsidiary of Parent OP) (collectively with Parent and Parent OP, "Extra Space") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an April 2, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"), which was amended May 18, 2023. Under the terms of the Merger Agreement, each existing share of Life Storage's common stock will be converted into 0.895 of a newly issued share of Extra Space resulting in Extra Space's shareholders owning 65% of the Pro Forma Company.

3.      Thereafter, on May 23, 2023, Extra Space filed a Registration Statement on Form S-4 as amended on June 2, 2023 on form S-4/A (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Extra Space stock price fluctuate prior to the consummation of the Proposed Transaction.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and

rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Life Storage and Extra Space, provided by Life Storage and Extra Space management to the Board and the Board's financial advisors Wells Fargo Securities, LLC ("Wells Fargo") and BofA Securities, Inc. ("BofA") or Extra Space's financial advisor Citigroup Global Markets Inc. ("Citi") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Wells Fargo, BofA, and/or Citi, if any, and provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Alaska and, at all times relevant hereto, has been a Life Storage stockholder.

8.      Defendant Life Storage is a self-administered and self-managed equity real estate investment trust that is in the business of acquiring and managing self-storage facilities.  Life Storage is incorporated in Maryland and has its principal place of business at 6467 Main Street, Williamsville, NY 14221.  Shares of Life Storage common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "LSI".

9.      Defendant Mark G. Barberio ("Barberio") has been a Director of the Company at all relevant times.  In addition, Mott serves as the Non-executive Chairman of the Board.

10.     Defendant Joseph V. Saffire ("Saffire") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO").

11.     Defendant Dana Hamilton ("Hamilton") has been a director of the Company at all relevant times.

12.     Defendant Susan Harnett ("Harnett") has been a director of the Company at all relevant times.

13.     Defendant Arthur L. Havener, Jr. ("Havener") has been a director of the Company at all relevant times.

14.     Defendant Edward Pettinella ("Pettinella") has been a director of the Company at all relevant times.

15.     Defendant David L. Rogers ("Rogers") has been a director of the Company at all relevant times.

16.     Defendant Stephen R. Rusmisel ("Rusmisel") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent is a self-administered and self-managed real estate investment trust that owned and/or operated 2,338 self-storage stores as of December 21, 2022.  Parent is incorporated in Maryland and has its principal place of business at 2795 Cottonwood Parkway, Suite 400, Salt Lake City, UT 84121.  Shares of Parent common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "EXR".

19.     Non-Parties Extra Space Merger Sub and Extra Space OP Merger Sub are wholly owned subsidiaries of Extra Space Storage, Inc. and Extra Space Storage, LP, respectively, created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Life Storage, Inc. is a self-administered and self-managed equity real estate investment trust that is in the business of acquiring and managing self-storage facilities.  Located in Buffalo, New York, the Company operates more than 1,150 storage facilities in 37 states and the District of Columbia. The Company serves both residential and commercial storage customers with storage units rented by month.  Life Storage consistently provides responsive service to more than 675,000 customers, making it a leader in the industry.

24.    The Company's 2022 End of the Year press release revealing performance results from the year preceding the announcement of the Proposed Transaction indicated impressive success.  For example, in the February 23, 2023 press release, the Company highlighted that it generated net income attributable to common shareholders of $358.1 million, or $4.22 per fully diluted common share; achieved adjusted FFO per fully diluted common share of $6.51, a 28.4% increase over the same period in 2021; and increased same store revenue by 15.2% and same store NOI by 19.4%, year over year.

25.    Speaking on the positive results, CEO Defendant Saffire said, "The Life Storage team delivered another strong, double-digit year in 2022. With these results, we have surpassed one billion in annual revenue on a consolidated basis for the first time, nearly double what Life Storage reported only five years ago. We completed our third most acquisitive year, investing more than one billion in acquisitions across key existing markets and adding another 107 stores to our third-party management platform. With solid pricing power, disciplined expense management, and the continued expansion of our footprint, we further improved our net-operating margins 250 basis points, year-over-year."

26.    Saffire continued, noting the Company's likelihood for future success, "Our strong performance and growing footprint have led to sector-leading returns. Over the last five years Life Storage has delivered total-shareholder-returns of approximately 150%, the best performance of any Self-Storage REIT. Since March of 2019, we are proud to have increased the Company's dividend six times for a total quarterly dividend increase of 80%. We remain focused on providing superior value for all Life Storage shareholders."

27.     The sustained success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Life Storage.  Based upon this positive outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Life Storage to enter into the Proposed Transaction without providing requisite information to Company stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Extra Space stock price fluctuate prior to the consummation of the Proposed Transaction.

31.     The Registration Statement also fails to indicate whether or not a committee of independent directors was created to run the sales process.  Furthermore, if such a committee was created, the Registration Statement should disclose the identity of the Board members who sat on it, as well as the powers of the committee.  On the other hand, if such a committee was not created, the Registration Statement fails to provide adequate reasoning behind such decision.

32.     Moreover, the Registration Statement indicates that the Company engaged multiple financial advisors. Notably, the Registration Statement indicates that Wells Fargo will be paid and/or has received $60 million for its services regarding the Proposed Transaction and BofA will

similarly be paid and/or has received $15 million for its services.  Notably, the Registration Statement fails to adequately explain why the cost of an additional financial advisor was necessary.

33.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Extra Space, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

35.     On April 3, 2023, Life Storage and Extra Space issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SALT LAKE CITY and BUFFALO, April 3, 2023 -** Extra Space Storage Inc. (NYSE: EXR) ("Extra Space") and Life Storage, Inc. (NYSE: LSI) ("Life Storage") announced today that the two companies have entered into a definitive merger agreement by which Extra Space will acquire Life Storage in an all-stock transaction. The transaction brings together two industry-leading platforms, and the combined company is expected to have a pro forma equity market capitalization of approximately $36 billion and total enterprise value of approximately $47 billion.
>
> Under the terms of the agreement, Life Storage shareholders will receive 0.8950 of an Extra Space share for each Life Storage share they own, representing a total consideration of approximately $145.82 per share based on Extra Space's share price close on March 31, 2023. At closing, Extra Space and Life Storage shareholders are expected to own approximately 65% and 35% of the combined company, respectively. The respective boards of directors of both Extra Space and Life Storage have unanimously approved the transaction.
>
> "We are impressed with the management team's strategic repositioning of the Life Storage portfolio over the last seven years, creating a highly diversified portfolio

of quality storage assets in strong growth markets." said Extra Space CEO Joe Margolis. "The business combination is highly synergistic, creating an even stronger combined company that will drive long-term, outsized operational and external growth opportunities through scale efficiencies, higher retained cash flow, data analytics, third-party management relationships and more. We look forward to welcoming the Life Storage family to Team Extra Space and bringing our organizations together to drive enhanced growth."

The transaction will increase the size of Extra Space's portfolio by more than 50% by store count with the addition of Life Storage's 1,198 properties, including 758 wholly-owned, 141 joint venture, and 299 third-party managed stores. In total, the transaction adds over 88 million square feet to the portfolio. The combined portfolio represents the largest storage operation in the country with over 3,500 locations, over 264 million square feet and serving over two million customers.

Joseph Saffire, Chief Executive Officer of Life Storage said, "Following a deliberate and comprehensive review, the Life Storage Board unanimously concluded that the pending transaction with Extra Space maximizes value today and is the transaction most likely to deliver superior long-term returns for our shareholders. Together with Extra Space, we expect to accelerate growth while maintaining our customer-centric focus and commitment to continued innovation. We are also pleased that Life Storage shareholders will participate in the tremendous upside of the combined Extra Space and Life Storage platform through a significant ownership stake in the combined company. I want to thank the Life Storage team for their continued unrelenting dedication and commitment to our business and customers."

The combination of Extra Space and Life Storage is expected to result in significant strategic, operational, and financial benefits to shareholders, including:

- Transformative scale: Combines two industry leaders with long track records of outperformance and creates the largest storage operator and the 6th largest REIT in the RMZ. Uniting Extra Space's and Life Storage's leading technology and data analytics platforms will also allow the combined company to continue to drive same-store net operating income growth while providing exceptional service to customers.

- Enhanced diversification: Creates highly diversified portfolio of quality storage assets in markets benefiting from compelling demand and population demographic trends.

- Significant synergy opportunity: The transaction is expected to generate at least $100 million in annual run-rate operating synergies from G&A and property operating expense savings as well as improved property operating revenue and tenant insurance income. Extra Space has a demonstrated track record of integrating stores onto its platform and

delivering outsized returns to shareholders. Extra Space will work closely with the Life Storage team to achieve anticipated synergies and intends to leverage Life Storage's talented workforce.

• Embedded growth drivers: The combined businesses' scaled and growing third-party management, joint venture, and bridge loan platforms will create a robust pipeline for accelerated external growth.
\
• Positive financial impact: The transaction is expected to be accretive to Core FFO per share within the first year of closing and be leverage neutral.

Extra Space will retain its name and continue to trade on the NYSE under the ticker "EXR". Kenneth W. Woolley will remain Chairman of the Board and Joseph D. Margolis will remain as CEO and Director. The Extra Space board will be expanded from 10 to 12 directors and will consist of nine directors from Extra Space's board and three directors from Life Storage.

The transaction is currently expected to close in the second half of 2023, subject to the approval of Extra Space and Life Storage shareholders and satisfaction of other customary closing conditions.

### *Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicate that Life Storage insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Life Storage.

37.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While

the Registration Statement provides the following it fails to provide the specific amount of Merger

Consideration that these shares will be exchanged for

| | Shares Beneficially Owned | | | |
|---|---|---|---|---|
| Beneficial Owner | Shares of Common Stock as of May 10, 2023[1] | Shares of Common Stock That May Be Acquired by July 9, 2023[2][3] | Total Beneficial Ownership | % of Outstanding Shares of Common Stock |
| David L. Rogers | 141,967 | — | 141,967 | * |
| Stephen R. Rusmisel | 16,925 | 7,985 | 24,910 | * |
| Mark G. Barberio | 17,561 | 5,250 | 22,811 | * |
| Edward J. Pettinella | 21,816 | — | 21,816 | * |
| Arthur L. Havener, Jr | 12,757 | 7,235 | 19,992 | * |
| Dana Hamilton | 3,811 | 4,530 | 8,341 | * |
| Susan Harnett | 2,329 | — | 2,329 | * |
| Joseph V. Saffire | 88,816 | — | 88,816 | * |
| Alexander E. Gress | 6,291 | — | 6,291 | * |
| David P. Dodman | 20,316 | — | 20,316 | * |
| All directors and executive officers as a group (10 persons) | 332,589 | 25,000 | 357,589 | 0.4% |
| The Vanguard Group, Inc.[4] | 12,792,584 | — | 12,792,584 | 15.0% |
| BlackRock, Inc.[5] | 9,673,399 | — | 9,673,399 | 11.4% |
| State Street Corp.[6] | 4,675,767 | — | 4,675,767 | 5.5% |
| Wellington Management Group LLP Wellington Group Holdings LLP Wellington Investment Advisors Holdings LLP Wellington Management Company LLP[7] | 3,492,809 | — | 3,492,809 | 4.1% |

38.     Additionally, Company insiders currently own large amounts of company options,

restricted stock units, and other equity awards, all of which will be exchanged for the merger

consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company.  Notably, the Registration statement fails to provide

an accounting of these amounts, or the merger consideration they will be exchanged for.

39.     Moreover, certain employment agreements with certain Life Storage executives,

entitle such executives to severance packages should their employment be terminated under certain

circumstances.  These 'golden parachute' packages are significant and will grant each director or

officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Tax Reimbursements ($)[4] | Other ($)[5] | Total ($) |
|---|---|---|---|---|---|---|
| Joseph V. Saffire | 5,982,767 | 19,264,561 | 63,842 | 8,682,163 | — | 33,984,151 |
| Andrew J. Gregoire[6] | — | 2,581,339 | — | — | 465,000 | 3,046,339 |
| Alexander E. Gress | 2,987,466 | 1,620,470 | 62,537 | 2,350,045 | — | 7,011,524 |
| David P. Dodman | 2,913,301 | 3,944,748 | 62,537 | 2,621,158 | — | 9,532,749 |

40.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Life Storage, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

42.     On May 23, 2023, the Life Storage Board and Extra Space caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.  Adequate information as to why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Extra Space stock price fluctuate prior to the consummation of the Proposed Transaction;

b.  Adequate information regarding whether or not a committee of independent directors was created to run the sales process.  Furthermore, if such a committee was created, the Registration Statement should disclose the identity of the Board members who sat on it, as well as the powers of the committee.  On the other hand, if such a committee was not created, the Registration Statement fails to provide adequate reasoning behind such decision;

c.  Adequate information regarding why the Company engaged multiple financial advisors at significant cost;

d.  Whether the confidentiality agreements entered into by the Company with Extra Space differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Extra Space, would fall away; and

    f.    Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Life Storage's Financial Projections*

44.    The Registration Statement fails to provide material information concerning financial projections for Life Storage provided by Life Storage management to the Board, Wells Fargo, BofA, and Citi and relied upon by Wells Fargo, BofA, and Citi in their analyses. The Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

45.    Notably the Registration Statement reveals that as part of its analyses, Wells Fargo reviewed certain, "internal financial analyses and forecasts for Life Storage." Similarly, BofA stated it reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of Life Storage." Finally, Citi also indicated that it reviewed, "certain financial forecasts and other information and data relating to Life Storage."

46.    The Registration Statement should have, but fails to provide, certain information in the projections that Life Storage management provided to the Board, Wells Fargo, BoFA, and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

47.     With regard to the *Life Storage Management Forecasts*, prepared by Life Storage Management, the Registration Statement fails to disclose material line items, including the following:

a.   Total Consolidated Storage Rental NOI, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: total continuing revenues from Life Storage's storage rental business, continuing property operating expenses for Life Storage's storage rental business, interest expense, impairment and casualty losses, operating lease expenses, depreciation and amortization expense, any losses on sale of real estate, acquisition related costs, general and administrative expense, net income, income from discontinued operations, interest income, any gains on sale of real estate, and equity in income of joint ventures.

b.   Total Ancillary Business NOI, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: total continuing revenues from Life Storage's businesses other than its storage rental business and continuing operating expenses for such businesses;

c.   Total Income from Joint Ventures, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: FFO from Life Storage's storage related joint ventures and FFO from Life Storage's bridge loan joint ventures;

d.   EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: general and administrative expenses;

e.   Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: capital expenditures, property acquisitions, investments in joint ventures, proceeds from the sale of properties;

f.   Core FFO, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: FFO, including the specific adjustments made as well as the sub metrics of net income attributable to common shareholders computed in accordance with GAAP, gains or losses on sales of properties, impairment of real estate assets, depreciation and amortization and adjustments to record unconsolidated partnerships and joint ventures on the same basis;

g.   Core FFO per share, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the number of fully diluted shares of Life Storage common stock, including the number of shares of Life Storage common stock issued and outstanding, the number of Life Storage OP preferred units outstanding, and other dilutive equity equivalents including unvested share awards;

h.   Adjusted Core FFO per share, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the impact of unvested share awards that would vest upon a change of control; and

i.   Dividend per share and unit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: number of fully diluted shares of Life Storage common stock, including the number of

shares of Life Storage common stock issued and outstanding, the number of Life Storage OP common units outstanding, the number of Life Storage OP preferred units outstanding, and other dilutive equity equivalents including unvested share awards that would vest upon a change of control.

48.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.    This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.    Without accurate projection data for Life Storage being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Wells Fargo, BoFA, and Citi financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Extra Space's Financial Projections*

51.    The Registration Statement fails to provide material information concerning financial projections for Extra Space provided by Extra Space management to the Board, Wells Fargo, BoFA, and Citi and relied upon by Wells Fargo, BoFA, and Citi in their analyses.  The

Registration statement discloses management-prepared financial projections for the Company which are materially misleading.

52.     Notably the Registration Statement reveals that as part of its analyses, Wells Fargo reviewed certain, "certain internal financial analyses and forecasts for … Extra Space." Similarly, BofA stated it reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of Extra Space." Finally, Citi indicated that it reviewed, "certain financial forecasts and other information and data relating to … Extra Space."

53.     The Registration Statement should have, but fails to provide, certain information in the projections that Extra Space management provided to the Board, Wells Fargo, BofA, and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

54.     With regard to the *Extra Space on a Standalone Basis* set of projections, prepared by Extra Space management, the Registration Statement fails to disclose material line items, including the following:

   a. Total Consolidated Storage Rental NOI, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: total revenues from storage rental business and property operating expenses;

   b. EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: revenue generated from the

tenants reinsurance business as well as property management fees and other income, interest income and equity income from unconsolidated investments, general and administrative expenses, and preferred distributions;

c.  Core FFO, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest expense, depreciation, tax expense and other adjustments;

d.  Core FFO per share, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the average weighted number of fully diluted shares of Extra Space common stock outstanding for the respective period; and

e.  Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: tax expense, capital expenditure for maintenance and redevelopments, property acquisitions, bridge loan investments and preferred investments, plus proceeds received from property dispositions.

55.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

56.  This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

57.  Without accurate projection data for Extra Space being presented in the Registration Statement, Plaintiff is unable to properly evaluate the merger consideration's true

worth, the accuracy of the Wells Fargo, BofA, or Citi's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Wells Fargo*

58.     In the Registration Statement, Wells Fargo describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

59.     With respect to the *Life Storage Selected Public Companies Analysis*, the Registration Statement fails to disclose:

    a.  The specific metrics observed for each Comparable Company;

    b.  The specific inputs and assumptions used to determine the utilized 2023 Adjusted Core FFO per share multiple reference range of 16.0x to 17.5x; and

    c.  The specific inputs and assumptions used to determine the utilized 2024 Adjusted Core FFO per share multiple reference range of 15.5x to 17.0x.

60.     With respect to the *Life Storage Dividend Discount Analysis*, the Registration Statement fails to disclose:

    a.  The terminal values for the Company calculated;

    b.  The specific inputs and assumptions used to determine the utilized range of terminal forward multiples of 16.00x to 17.50x as applied to Life Storage's Adjusted Core FFO per share for the year ending December 31, 2027;

     c.   The specific inputs and assumptions used to determine the utilized discount range of 10.00% to 11.00%.

61.    With respect to the *Extra Space Selected Public Companies Analysis*, the Registration Statement fails to disclose:

     a.   The specific metrics observed for each Comparable Company;

     b.   The specific inputs and assumptions used to determine the utilized 2023 Adjusted Core FFO per share multiple reference range of 16.5x to 18.5x; and

     c.   The specific inputs and assumptions used to determine the utilized 2024 Adjusted Core FFO per share multiple reference range of 15.5x to 17.5x.

62.    With respect to the *Extra Space Dividend Discount Analysis*, the Registration Statement fails to disclose:

     a.   The terminal values for the Company calculated;

     b.   The specific inputs and assumptions used to determine the utilized range of terminal forward multiples of 17.00x to 19.00x as applied to Extra Space's Adjusted Core FFO per share for the year ending December 31, 2027;

     c.   The specific inputs and assumptions used to determine the utilized discount range of 10.00% to 11.00%.

63.    With respect to the *Combined Company Pro Forma Dividend Discount Analysis-based Illustrative Value Creation Analysis*, the Registration Statement fails to disclose:

     a.   The projected dividends for the Pro Forma Company;

     b.   The terminal values for the Company calculated;

     c.   The specific inputs and assumptions used to determine the utilized range of terminal forward multiples of 17.0x to 19.0x to the Combined Company's

projected core funds from operations per share for the year ending December 31, 2027; and

d.  The specific inputs and assumptions used to determine the utilized discount range of 9.50% to 10.50%.

64.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

65.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Life Storage stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

66.     In the Registration Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

67.     With respect to the *Life Storage - Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the following:

a.  The specific inputs and assumptions used to determine the utilized multiple reference range of 2023 EV / EBITDA multiples of 18.3x to 20.3x;

b.  The specific inputs and assumptions used to determine the utilized multiple reference range of 2024 EV / EBITDA multiples of 17.3x to 19.3x;

c.  The specific inputs and assumptions used to determine the utilized multiple reference range of 2023 estimated FFO per share multiples of 16.2x to 18.2x; and

d.  The specific inputs and assumptions used to determine the utilized multiple reference range of 2024 estimated FFO per share multiples of 15.4x to 17.4x.

68.    With respect to the *Life Storage - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a.  The terminal values for Life Storage calculated;

b.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.50% to 3.00%;

c.  The specific inputs, metrics, and assumptions used to determine the utilized forward EBITDA exit multiples of 14.6x to 20.3x;

d.  The specific inputs, metrics, and assumptions used to determine the utilized forward FFO exit multiples of 12.6x to 20.0x;

e.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 7.8% to 9.2%;

f.  Life Storage's weighted average cost of capital utilized; and

g.  Life Storage's net debt as of the end of the fourth quarter of fiscal year 2022.

69.     With respect to the *Life Storage – Other Factors - Analysis*, the Registration Statement fails to disclose the following:

a.   The specific price targets utilized;

b.   The specific wall street firms that generated the utilized price targets; and

c.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate of 9.4%.

70.     With respect to the *Extra Space - Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the following:

a.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2023 EV / EBITDA multiples of 18.4x to 20.4x;

b.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2024 EV / EBITDA multiples of 17.3x to 19.3x;

c.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2023 estimated FFO per share multiples of 16.2x to 18.2x; and

d.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2024 estimated FFO per share multiples of 15.3x to 17.3x.

71.     With respect to the *Extra Space - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a.   The terminal values for Extra Space calculated;

b.   The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.50% to 3.00%;

    c.  The specific inputs, metrics, and assumptions used to determine the utilized forward EBITDA exit multiples of 14.8x to 21.1x;

    d.  The specific inputs, metrics, and assumptions used to determine the utilized forward FFO exit multiples of 13.2x to 21.2x;

    e.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 7.5% to 8.9%;

    f.  Extra Space's weighted average cost of capital utilized;

    g.  Extra Space's net debt as of the end of the fourth quarter of fiscal year 2022.

72.    With respect to the *Extra Space - Discounted Cash Flow Analysis - Synergies*, the Registration Statement fails to disclose the following:

    a.  The specific projection metrics for the following utilized:

        i.  synergies from revenue, tenant insurance, operating expenses and G&A, net of dis-synergies from property taxes expected to result from the Transactions;

    b.  The terminal values for the Synergies calculated;

    c.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.50% to 3.00%;

    d.  The specific inputs, metrics, and assumptions used to determine the utilized forward EBITDA exit multiples of 14.8x to 21.0x;

    e.  The specific inputs, metrics, and assumptions used to determine the utilized forward FFO exit multiples of 13.3x to 21.1x;

    f.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 7.6% to 9.0%;

    g.   The blended weighted average cost of capital utilized;

    h.   The specific inputs and assumptions used to determine Life Storage's weighted average cost of capital range of 7.8% to 9.2%;

    i.   The specific inputs and assumptions used to determine Extra Space's weighted average cost of capital range of 7.5% to 8.9%; and

    j.   The number of fully diluted shares of Extra Space common stock outstanding.

73.    With respect to the *Extra Space – Other Factors - Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific price targets utilized;

    b.   The specific wall street firms that generated the utilized price targets; and

    c.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate of 9.0%.

74.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

75.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Life Storage stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

76.    In the Registration Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

77.    With respect to the *Life Storage - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.  The terminal values for Life Storage calculated;

    b.  The specific inputs, metrics, and assumptions used to determine the utilized terminal capitalization rates ranging from 5.15% to 6.15%;

    c.  The specific inputs, metrics, and assumptions used to determine the utilized 2.5% growth rate;

    d.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.20% to 10.12%; and

    e.  Life Storage's weighted average cost of capital utilized.

78.    With respect to the *Extra Space - Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.  The terminal values for Extra Space calculated;

    b.  The specific inputs, metrics, and assumptions used to determine the utilized terminal capitalization rates ranging from 4.86% to 5.86%;

    c.  The specific inputs, metrics, and assumptions used to determine the utilized 2.5% growth rate;

      d.   The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 8.59% to 9.42%; and

      e.   Extra Space's weighted average cost of capital utilized.

79.    With respect to the *Life Storage - Selected Public Companies Analyses*, the Registration Statement fails to disclose the following:

      a.   The specific metrics observed for each comparable company;

      b.   The specific inputs and assumptions used to determine the utilized multiple reference range of NAV Premium/Discount derived from the Life Storage Selected Public Companies of (21.6%) to (2.9%);

      c.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2023E Core FFO Multiples of 14.6x to 19.0x; and

      d.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2024E Core FFO Multiples of 14.2x to 18.0x.

80.    With respect to the *Extra Space - Selected Public Companies Analyses*, the Registration Statement fails to disclose the following:

      a.   The specific metrics observed for each comparable company;

      b.   The specific inputs and assumptions used to determine the utilized multiple reference range of NAV Premium/Discount derived from the Life Storage Selected Public Companies of (21.6%) to 0.4%;

      c.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2023E Core FFO Multiples of 14.6x to 18.9x; and

      d.   The specific inputs and assumptions used to determine the utilized multiple reference range of 2024E Core FFO Multiples of 14.2x to 17.7x.

81.     With respect to the *Selected Precedent Transactions Analyses*, the Registration Statement fails to disclose the following:

    a.   The specific precedent transactions analyzed;

    b.   The dates on which each precedent transaction analyzed was announced;

    c.   The dates on which each precedent transaction analyzed closed;

    d.   The aggregate value of each precedent transaction analyzed;

    e.   The specific metrics observed for each precedent transaction analyzed;

    f.   The specific inputs and assumptions used to determine the utilized range of implied capitalization rates derived from such transactions of 3.7% to 6.0%.

82.     With respect to the *Illustrative Discounted Cash Flow Analysis of Combined Company*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized range of terminal implied capitalization rates of 4.86% to 5.86%; and

    b.   The specific inputs and assumptions used to determine the utilized range of discount rates of 8.59% to 9.42%.

83.     With respect to the *Other* section, the Registration Statement fails to disclose the following:

    a.   The specific Wall Street price targets utilized; and

    b.   The specific Wall Street firms that generated the utilized price targets.

84.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

85.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value

and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Life Storage stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

86.     Plaintiff repeats all previous allegations as if set forth in full herein.

87.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

88.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

89.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or

oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

90.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

91.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

92.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

93.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

94.     Plaintiff repeats all previous allegations as if set forth in full herein.

95.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

96.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

97.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Life Storage's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

98.      The Individual Defendants acted as controlling persons of Life Storage within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Life Storage to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Life Storage and all of its employees. As alleged above, Life Storage is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 5, 2022                              **BRODSKY & SMITH**

                                    By: *Evan J. Smith*
                                        Evan J. Smith
                                        240 Mineola Boulevard
                                        Mineola, NY  11501
                                        Phone:  (516) 741-4977
                                        Facsimile (561) 741-0626

                                        *Counsel for Plaintiff*